UNITED STATES, for Use of HUDSON RIVER STONE SUPPLY CO.,
v. MOLLOY et al.

(Circuit Court of Appeals, Second Circuit. February 1, 1906.)

No. 35.

**1. SALES—ACTION FOR PRICE—EVIDENCE—RELEVANCY.**

In assumpsit to recover for materials furnished to a government con-
tractor, statements furnished by the latter to the government of his plant,
labor, and materials employed in the work actually done by him for
which he asked payment, were inadmissible to show that defendant was
not delayed in his work by reason of plaintiff's default or that such
contractor did not actually need the materials which were required by
him, and which plaintiff failed to furnish.

**2. SAME—BREACH—MATERIALITY.**

Where, in an action for the value of stone furnished a government con-
tractor, defendant claimed that plaintiff had broken his contract by fail-
ing to furnish the stone as required, and defendant testified that he was
forced to delay the work because of lack of stone, such proof discloses a
substantial breach of plaintiff's contract.

**3. SAME — ASSUMPSIT — QUANTUM VALEBAT — EXPRESS CONTRACT — BREACH —
WAIVER.**

Where plaintiff's delivery of stone to defendant was not in accordance
with the terms of their contract, but defendant received, accepted, and
used stone delivered by plaintiff under the contract with knowledge of
plaintiff's breaches, plaintiff was entitled to recover on a quasi contract
for the value of the stone actually delivered, less any losses sustained by
reason of his breach of contract.

In Error to the Circuit Court of the United States for the Southern
District of New York.

Writ of error to review the action of the United States Circuit
Court for the Southern District of New York, in directing a verdict
for defendants, rendering a judgment on the merits in their favor
and ordering that the complaint be dismissed.

W. H. Stayton, for plaintiff in error.

A. J. Rose, for defendants in error.

Before LACOMBE and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. This case has already been before
this court on a writ of error from a direction of a verdict for de-
fendants (127 Fed. 953, 62 C. C. A. 585), and the opinion therein
sufficiently states the facts bearing on this controversy and the rela-
tions of the parties, so far as they were shown on the former trial.
Upon this trial it appeared that plaintiff had failed to keep the de-
fendants supplied with stone "as required," in accordance with the
terms of the express contract. The court held that the contract had
not been fulfilled, and directed a verdict for defendants.

The exceptions challenge the correctness of the action of the trial
judge in directing said verdict, and also in excluding certain papers
offered by the plaintiff, claimed as tending to show that the defendant
was not delayed in the work by the plaintiff's breaches of the con-
tract. It is a sufficient answer to this second exception that the

144 F.—21

papers offered were incompetent to prove any such claim. They consisted merely of statements furnished to the government, by the defendant Molloy, of plant, labor, and material employed in the work actually done by him for the government, for which he had asked payment. There is nothing to show that he was not delayed in his work by reason of plaintiff's defaults, or that he did not actually need the stone which was required by him, and which plaintiff failed to furnish. This exception, therefore, is without merit.

The exception to the direction of a verdict is supported by the contentions (1) that the agreement "to keep the party of the second part supplied with stone as required" means as he actually and reasonably required in the conduct of his business; (2) that the plaintiff was entitled to show that the alleged breaches were not substantial or material; and (3) that inasmuch as the defendant Molloy accepted and used some of the installments of stone, although not delivered or received in accordance with the terms of the contract as to time of delivery, defendants are liable for the value of said installments.

As to the first contention it is sufficient to say that no competent evidence was offered to show that the stone as required by Molloy was not actually and reasonably required. He testified as follows:

"We never got any stone on time, always delayed. Q. Always late. On the 25th you sent a letter or telegram: 'No stone here yet. What is the matter?' Do you recall that? A. Yes. The stone had not been furnished. We were out of stone at that time. The statements in the letters and telegrams in regard to the delays or failure to get stone there were absolutely true and correct. I did have a talk with Mr. Alsdorf with reference to this delay. He was the gentleman mentioned by Mr. Shaw as the vice president of the company. He was the man with whom this contract was made, or the negotiations for it. The conversation with him about this delay was that I complained all the while to him, and he said there was something the matter with the crusher, and they had oversold the quantity the crusher would produce, and the crusher had broke down or something. And they were promising and promising. Meanwhile the Government was pressing me on the other side. I had to do something or get out of there. When I had no stone there the men could not work. There was nothing but concreting at that time—nothing for the men to do."

This evidence disposes also of the second contention because it tends to show that plaintiff's breaches were substantial or material.

The third contention raises the question as to the liability of defendants for the acceptance and use by the defendant Molloy of certain installments of stone not delivered as required under the contract.

This action is not brought upon the written contract between the parties, but upon a quantum valebat for the value of stone delivered to, and accepted and used by, defendant Molloy in the work covered by his contract with the government. He asserts that none of this stone was received on time or "when required" in accordance with the terms of his contract with plaintiff, and that, therefore, he (Molloy) elected, after the receipt of certain installments, to treat plaintiff's defaults as an absolute breach of the contract, and refused to accept installments subsequently tendered. It appears, therefore, that the stone received by the defendant Molloy was accepted and used by him with knowledge of the fact that it had not been delivered in accordance with the terms of the contract, but in violation thereof.

The precise question here raised is whether in these circumstances, the defendant can retain the stone and yet refuse to pay for it. In our former opinion in this case we referred to some cases bearing on this question, but expressly declined to pass upon the point because it was not involved therein.

Mr. Parsons, in his work on Contracts, stated the general rule as follows:

"We have seen that where parties make a contract which is not apportionable, no part of the consideration can be recovered in an action on a contract, until the whole of that for which the consideration was to be paid is performed. But it must not be inferred from this that a party who has performed a part of his side of a contract, and has failed to perform the residue, is in all cases without a remedy. For although he can have no remedy on the contract as originally made, the circumstances may be such that the law will raise a new contract, and give him a remedy on a quantum meruit. * * *

"So, too, if one party, without the fault of the other, fails to perform his side of the contract in such a manner as to enable him to sue upon it, still, if the other party have derived a benefit from the part performed, it would be unjust to allow him to retain that without paying anything. The law, therefore, generally implies a promise on his part to pay such a remuneration as the benefit conferred upon him is reasonably worth; and to recover that quantum of remuneration, an action of indebitatus assumpsit is maintainable.' 2 Parsons, Cont. 523.

This statement of the law is referred to with approval by the Supreme Court of the United States in Dermott v. Jones, 23 How. 220–232, 16 L. Ed. 442. The cases bearing upon this subject may be divided into three classes—contracts of sale, contracts for some specific work, such as the erection of a building upon the land of another, and contracts for personal services. There was formerly such a conflict of authority as to the right of recovery in any of these cases that the foregoing statement rather expressed what the rule should be than what it was in fact. Such right of recovery in personal services cases has been generally denied, except in New Hampshire (Britton v. Turner, 6 N. H. 481, 26 Am. Dec. 713) and Iowa (Byerlee v. Mendel, 39 Iowa, 382). In cases of work done and materials furnished for another on his land, but not according to contract, such right of recovery on quantum meruit or valebat has been sustained in Massachusetts (Hayward v. Leonard, 7 Pick. 181, 19 Am. Dec. 268; Smith v. First Cong. Meetinghouse, 8 Pick. 178; Lord v. Wheeler, 1 Gray, 282; Hedden v. Roberts, 134 Mass. 38, 45 Am. Rep. 276), and in Maine, Minnesota, Pennsylvania, Illinois, Vermont, and many other states. In some of the cases there was evidence of an actual assent or acceptance, in others such assent was implied from the retention of the materials or other benefit received by defendant. The whole question is fully discussed in Gillis v. Cobe, 177 Mass. 584, 59 N. E. 455.

In Pinches v. Swedish Evangelical Lutheran Church, 55 Conn. 183, 10 Atl. 264, the Supreme Court of Connecticut, reviewing the authorities in a suit brought for labor and materials used in erecting a church, not according to the contract and where there was no assent by defendant to the variations from the contract, held as follows, by a divided court:

"The weight of authority is now clearly in favor of allowing compensation for services rendered and materials furnished under a special contract, but not in entire conformity with it, provided that the deviation from the contract was not willful, and the other party has availed himself of, and been benefited by, such labor and materials; and as a general rule the amount of such compensation is to depend upon the extent of the benefit conferred, having reference to the contract price for the entire work."

See, also, Jones v. Marlborough, 70 Conn. 583, 40 Atl. 460; Jones & Hotchkiss Co. v. Davenport, 74 Conn. 418, 50 Atl. 1028.

The present case, however, is more nearly analogous to contracts of sale with delivery on installments. It is true that the stone was intended to be incorporated in work to be constructed by defendant, but it was not upon his land, and the government was to be the final authority as to the acceptance of the stone, which could be used in said work only upon approval by the government. We are brought, then, to a consideration of cases of an entire contract of sale, where there has been only a partial performance by plaintiff. The leading English case in support of this right of recovery is Oxendale v. Wetherell, 9 B. & C. 386. There plaintiff agreed to deliver 250 bushels of wheat, but only delivered 130 bushels, and the court held that he could recover the value thereof. Parke, J., said:

"Where there is an entire contract to deliver a large quantity of goods, consisting of distinct parcels, within a specified time, and the seller delivers part, he cannot, before the expiration of that time, bring an action to recover the price of the part delivered, because the purchaser may, if the vendor fail to complete his contract, return the part delivered. But if he retain the part delivered, after the seller has failed in performing his contract, the latter may recover the value of the goods which he has so delivered."

To the same effect is Bowker v. Hoyt, 18 Pick. (Mass.) 555; Richards v. Shaw, 67 Ill. 222, and cases cited.

In Benjamin on Sales (7th Ed.) Bennett's Notes, p. 80, Mr. Bennett says:

"With us also it has been frequently held, in conformity with Oxendale v. Wetherell, that if part of an entire order for goods is accepted and retained after or with knowledge that the whole will not be furnished, an implied contract arises to pay pro rata, subject in some courts to a counter claim for damages for noncompletion. Bowker v. Hoyt, 18 Pick. (Mass.) 555, an excellent illustration; Richards v. Shaw, 67 Ill. 222; Flanders v. Putney, 58 N. H. 358; Harralson v. Stern, 50 Ala. 347; Sentell v. Mitchell; 28 Ga. 196; Goodwin v. Merrill, 13 Wis. 658; Booth v. Tyson, 15 Vt. 518; Shaw v. Badger, 12 Serg. & R. (Pa.) 275; Ruiz v. Norton, 4 Cal. 355, 60 Am. Dec. 618; Saunders v. Short, 86 Fed. 225, 30 C. C. A. 462 and cases cited."

Mr. R. N. Benjamin states the rule as follows:

"It is a rule supported by the weight of modern authority, that, if the buyer of a specified quantity of goods sold under an entire contract, receive a part thereof, and retain it after the seller has refused to deliver the residue, there is a severance of the entirety of the contract, and the buyer becomes liable to the seller for the price of such part; but he may reduce the seller's claim by showing that he has sustained damage by the seller's failure to fulfill his contract." R. N. Benjamin's Principles of Sales, p. 146, § 3, and cases cited.

In a case like that at bar, however, where the suit is not brought on the contract, the recovery would not necessarily be for the con-

tract price for such part as was furnished and accepted, but, as Mr. Benjamin states it, as follows:

"On general principles, either party to a contract whether entire or severable, may recover, as on an implied agreement, for a partial performance, which has been voluntarily accepted by the other, with full knowledge of the breach, subject, however, to the right of the latter to recoup for the failure to fully perform the express contract." Id. p. 147.

To the same effect is Clark on Contracts, p. 550.

The general rule in the federal courts is shown by the following citation from Dermott v. Jones, 2 Wall. 1, 17 L. Ed. 762, quoted in our former opinion, where, in discussing a building contract, the court says:

"While a special contract remains executory the plaintiff must sue upon it. * * * When he has been guilty of fraud, or has willfully abandoned the work, leaving it unfinished, he cannot recover in any form of action. Where he has in good faith fulfilled, but not in the manner or not within the time prescribed by the contract, and the other party has sanctioned or accepted the work, he may recover upon the common counts in indebitatus assumpsit. He must produce the contract upon the trial, and it will be applied as far as it can be traced; but if, by the fault of the defendant, the cost of the work or materials has been increased, in so far, the jury will be warranted in departing from the contract prices. In such cases the defendant is entitled to recoup for the damages he may have sustained by plaintiff's deviations from the contract, not induced by himself, both as to the manner and time of the performance. There is great conflict and confusion in the authorities upon this subject. The propositions we have laid down are reasonable and just, and they are sustained by a preponderance of the best considered adjudications."

The rule has been recognized both in building contracts and contracts of sale.

Thus in McDonough v. Evans' Marble Co., 112 Fed. 634, 50 C. C. A. 403, where the contract provided for furnishing a quantity of tile to be laid in a certain courthouse, and only a portion was delivered, but this was accepted and used, the court held that the plaintiff was entitled to payment for the tile actually received and appropriated by the defendant, less the damages occasioned by the failure to deliver the balance.

In Crane Elevator Co. v. Clark, 80 Fed. 705, 26 C. C. A. 100, where there was an agreement to construct elevators in a building, and it was claimed that they were not constructed according to contract and suit was brought upon the common counts, the court said as follows:

"It is undoubtedly the rule that the plaintiff must declare specially, the contract continuing executory, but when it has been executed, and payment only remains, the plaintiff may, at his election, declare specially or upon the common counts; and so, also, when the work contracted to be done was not performed within the stipulated time or in the stipulated manner, and yet was beneficial to the defendant, and has been accepted and enjoyed by him, the plaintiff cannot recover upon the contract, because he has departed from it, but may recover upon the common counts. Dermott v. Jones, 2 Wall. 1, 17 L. Ed. 762; Taylor v. Renn, 79 Ill. 186."

In Hiss Co. v. Pitcairn (C. C.) 107 Fed. 425, Judge Acheson, sustaining a right of recovery in such a case, referring to and ap-

proving the case of Ligget v. Smith, 3 Watts (Pa.) 331, 27 Am. Dec. 358, says:

"There the plaintiff brought covenant on articles of agreement by which he undertook to build the brickwork of a warehouse for the defendant. The articles provided that the plaintiff should 'fill in all the brickwork with mortar, or what is generally termed "flushing-in."' The plaintiff built the brickwork but failed to fulfill this stipulation as to flushing-in. The trial court ruled that the plaintiff could recover the contract price of his work, less a sum sufficient to compensate the defendant for the defective performance. This ruling was affirmed by the Supreme Court of Pennsylvania. That court, speaking by Chief Justice Gibson, said: 'Previous to the decision of Boone v. Eyre, 1 H. Bl. 273, note (a), it seems to have been taken that nothing less than entire performance of a mutual covenant would entitle the party to his action for a breach on the other side. In that case, however, a more reasonable and just rule was adopted, by which a mutual or dependant covenant, which goes but to a part of the consideration on both sides, and whose breach may be compensated in damages, is to be treated exactly as if it were separate and independent. This is distinctly the principle; and it has been established by a train of decisions both in England and this country, which it is unnecessary to quote.'

"The court applied the principle to the case then before it and declared: 'The result is that as the building, as finished, was not unfit for the use to which it was destined, though less fit than it was stipulated to be, the imperfection in its construction did not reach the entire consideration, and that the plaintiff was properly allowed to recover his demand, less a sum sufficient to compensate his defective execution of the contract.'"

In Saunders v. Short, 86 Fed. 225, 30 C. C. A. 462, where there was an entire contract for the delivery of a certain number of cattle and only a portion were delivered, the Court of Appeals for the Ninth Circuit, reviewing the authorities, said as follows:

"In respect to the effect of the acceptance of a delivery of a part of personal property contracted for under an entire contract the American cases are conflicting. In some of the states it has been held that nothing can be recovered for part performance of an entire contract unless full performance was waived or prevented. Champlin v. Rowley, 18 Wend. (N. Y.) 194; Smith v. Brady, 17 N. Y. 173, 72 Am. Dec. 442; Catlin v. Tobias, 26 N. Y. 217, 84 Am. Dec. 183; Jennings v. Lyons, 39 Wis. 553, 20 Am. Rep. 57; Mill Co. v. Westervelt, 67 Me. 449. In Avery v. Willson, 81 N. Y. 341, 37 Am. Rep. 503, however, it was held that, if the vendee evinces by his acts a waiver of a complete delivery, by the receipt and appropriation to his own use of a portion of the goods contracted for, he thereby becomes liable to pay for what was actually delivered. The modern American rule seems to be that a party who has failed to perform in full his contract for the sale and delivery of personal property may recover compensation for the part actually delivered and received thereunder, less the damages occasioned by his failure to make the complete delivery. Many of the cases establishing this principle will be found cited in note 19, § 1,032, 2 Benj. Sales. In Richards v. Shaw, 67 Ill. 222, in which the contract was to deliver 500 bushels of corn at a specified price per bushel, and the seller delivered only 391 bushels, for which he brought suit, the court said that, if the vendee received part of the goods sold under an entire contract, and retained that part after breach, this was a severance, and a suit would lie for the price, but the buyer might deduct damages for the failure to fulfill the residue of the contract. A contract for the sale and delivery of a certain number of cattle, unlike one for the building and completion of a house or other structure, is severable in its nature, and there is no just reason why, if the vendee accepts and appropriates to his own use a portion of the property so contracted for, he should not pay the stipulated price for such portion, less the amount of damages sustained by him by reason of the vendor's failure to make complete delivery."

See also, In re Kelly (D. C.) 51 Fed. 194.

In this circuit, in the case of Standard Gas Light Co. v. Wood, 61 Fed. 74, 9 C. C. A. 362, the plaintiff contracted to do certain work on the property of the defendant. The work was not completed within the time limited. The jury found a verdict for the plaintiff. The defendant excepted on the ground:

"That no evidence in excuse for nonperformance of the agreement to complete the work on November 15th was admissible, because the complainant averred performance, and under such an averment evidence in excuse of nonperformance was not admissible."

The court said as follows, affirming the judgment:

"The first objection proceeds from a misconception of the character of the complaint, which was in general assumpsit for the reasonable value of the work which the defendant had accepted, and was framed in accordance with the rule of pleading stated in Dermott v. Jones, 2 Wall. 1, 17 L. Ed. 762."

Mr. Page, in his recent work on Contracts, says:

"If a party to a contract receives benefits thereunder, with knowledge of breach by the adversary party, or if, after knowledge of such breach, he retains such benefits, he should account at least for a reasonable compensation therefor. Thus voluntary acceptance of an electric light plant, or of a job of electric wiring, or a water works, which does not substantially comply with the contract, renders the party so accepting liable for a reasonable compensation therefor. So accepting and retaining machines not built in compliance with the contract makes the vendee liable for their value as chattels. So one who delivers brick, or other goods, under a contract where such delivery is not a full performance of such contract, but the vendee accepts such goods, may recover a reasonable compensation therefor. So accepting work done in grading and constructing streets after failure of the contractor to complete the work within the time agreed upon, creates a liability to pay a reasonable compensation for the work done." · Vol. 3, 2437.

This contract, however, was made, and was to be performed, and this suit was brought, in the state of New York.

In a note in Parsons on Contracts, vol. 2, p. 524, it is said:

"But in New York, the case of Oxendale v. Wetherell has been entirely repudiated, and ·it is there held, that the vendor in such a case is not entitled to any remedy. Champlin v. Rowley, 13 Wend. 258; Id., 18 Wend. 187; Mead v. Degolyer, 16 Wend. 632; McKnight v. Dunlop, 4 Barb. 36; Paige v. Ott, 5 Denio, 406; Oakley v. Morton, 11 N. Y. 25, 62 Am. Dec. 49."

Mr. Bennett, in his notes on Benjamin on Sales (7th Ed.) page 90, says as follows:

"But some courts have apparently declined to apply the rule adopted in Oxendale v. Wetherell. In some of these cases it does not appear whether there was any acceptance of part after knowledge of an intended non-fulfillment, though that is not made the prominent ground of the decision. See Champlin v. Rowley, 13 Wend. (N. Y.) 258, and 18 Wend. (N. Y.) 187; Mead v. Degolyer, 16 Wend. (N. Y.) 632; Paige v. Ott, 5 Denio (N. Y.) 406; Kein v. Tupper, 52 N. Y. 555; Witherow v. Witherow, 16 Ohio, 238. The peculiar language of the contracts in some of these may also have had much to do with the conclusion. See Tipton v. Feitner, 20 N. Y. 423. And the later cases in New York imply that if the vendee accepts part, then knowing that the whole will not be delivered, he thereby waives full performance and becomes liable for the part accepted, which is perhaps all that Oxendale v. Wetherell intended to decide. See Avery v. Willson, 81 N. Y. 341, 37 Am. Rep. 503."

It is true that in some of the earlier cases cited above the doctrine of Oxendale v. Wetherell is distinctly repudiated. But in. Tipton v. Feitner, supra, the court reviews and distinguishes these and other cases, and holds that where entire delivery is not a condition precedent, or where the contract is separable by its terms, or where there is to be delivery by parcels and payment for each parcel on delivery, the party in fault may recover for the value thereof, subject to defendant's right of recoupment. And in Kein v. Tupper, 52 N. Y. 555, the court, holding that a vendee might accept a partial delivery and waive the delivery of the remainder, found that in the particular case the power of the agent was expressly to receive, limited to an acceptance of the whole quantity contracted for, and as the whole had not been delivered there was no acceptance. See Nolan v. Whitney, 88 N. Y. 648.

In Avery v. Willson, supra, the contract was for the sale of a certain number of boxes of glass to be delivered at one time. A portion of the goods was delivered at the defendant's request, and accepted, received and used, without notice to plaintiff that defendants would insist upon a full delivery. The court held that if the defendants elected to receive the portion delivered and appropriated it to their own use, and indicated by their acts that they waived the condition of complete performance, they were liable to pay for what was actually delivered.

There the court, distinguishing the earlier cases, holds that there the right of recovery was refused because it was the intention of the parties that all the goods should be delivered as a condition precedent to any right of recovery, and that there was no acceptance or waiver.

In Parke v. Franco-American Trading Co., 120 N. Y. 51, 23 N. E. 996, the plaintiff agreed to furnish material for the construction of buildings along the line of the Panama Canal. The court below directed a verdict for the defendant on the ground that the contract was not performed. The Court of Appeals, reversing the court below, in the course of its opinion, says as follows:

"There was evidence on the part of the plaintiffs tending to prove waiver of the defective performance of the contract by them; and that this was done by the defendant after it had knowledge of all the facts essential to such effect so far as to deny to it the right of forfeiture for breach. This is without prejudice to such claim as the defendant may have for damages resulting from the fraudulent means employed and effectually used in the delivery, and causing the shipment of lumber rejected by the inspectors, and lumber not of the character and quality of that which the plaintiffs undertook to furnish."

In Brady v. Cassidy, 145 N. Y. 171, 39 N. E. 814, where defendants claimed failure to comply with the terms of a contract for the sale of goods in that they failed to deliver all of the merchandise as agreed, the court held that the plaintiff was entitled to recover for the goods actually delivered, less defendant's damages by reason of the breach, where it appeared that the defendant had waived the full performance of the contract.

From this survey of the authorities it appears that the cases which deny any right of recovery for the value of a partial performance

after acceptance proceed upon the theory either that under the terms of the contract entire performance was a condition precedent to any right of recovery, or that the acceptance is predicated upon the understanding that the performance is pro tanto in fulfillment of the contract and with the expectation that it will be substantially carried out, or upon the general ground that a contract cannot be implied where there is an existing express contract. "Expressum facit cessare tacitum." In the case at bar, there is no ground for the application of any of said theories. Here, the plaintiff never delivered any stone in accordance with the terms of the contract, but the installments were received, accepted, and used by the defendant after knowledge on his part of plaintiff's breaches of the contract. Therefore the acceptance on which the cause of action is founded was not a conditional acceptance on the theory of performance, but an absolute acceptance with actual knowledge of nonperformance by reason of breaches so substantial that the defendant after acceptance elected to treat them as a justification for terminating the contract and refusing to permit plaintiff to make further deliveries.

The injustice resulting in many cases from the application of the earlier rule has led to a modification whereby a party may be held liable for the value of the benefits received, less his losses by reason of any breach, where such breach is not intentional or willful, and where the other party either has accepted partial performance of a contract with, and in some cases without, knowledge that it would not be, or had not been fulfilled, or where a party has received benefits from such partial performance, which it would be inequitable to permit him to enjoy without payment therefor, and in some cases where the subject-matter of the contract has been so incorporated with the property of such party that it cannot be returned. In such cases the right of recovery is predicated upon the promise implied from the acceptance or benefit independent of the express contract. We are constrained to hold that the case at bar is one which calls for the application of this rule.

The judgment is reversed.